**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| RELIGIOUS RIGHTS FOUNDATION OF PA, a Pennsylvania non-profit corporation; C.Y. and L.Y., individually and as the parents and natural guardians of F.Y., a minor; A.C., individually and as the parent and natural guardian of M.W., a minor; and J.K., individually and as a parent and natural guardian of O.K., I.L., L.K., and W.K., minors, | : : : : : : : : : : : : |
| | : |
| Plaintiffs, | : |
| | : |
| v. | : |
| | : |
| PENNSYLVANIA INTERSCHOLASTIC ATHLETIC ASSOCIATION, Inc., | : : |
| | : |
| Defendant. | : : : : : : : : |

Case No.  4:25-CV-1406

**COMPLAINT**

Filed on Behalf of:
Plaintiffs

Counsel of Record for this Party:

Thomas E. Breth
PA ID # 66350
tbreth@dmkcg.com

Thomas W. King, III
PA ID # 21580
tking@dmkcg.com

**Dillon McCandless King Coulter & Graham**
128 W. Cunningham Street
Butler, PA 16001
Telephone: 724-283-2200
Facsimile: 724-283-2298

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

RELIGIOUS RIGHTS FOUNDATION OF    :
PA,  a Pennsylvania non-profit corporation;    :
C.Y. and L.Y., individually and as the    :   No.:
parents and natural guardians of F.Y., a    :
minor; A.C., individually and as the parent    :
and natural guardian of M.W., a minor; and    :
J.K., individually and as a parent and    :
natural guardian of O.K., I.L., L.K., and    :
W.K., minors,    :
   :
           Plaintiffs,    :
   :
           v.    :
   :
PENNSYLVANIA INTERSCHOLASTIC    :
ATHLETIC ASSOCIATION, Inc.,    :
   :
           Defendant.    :

## <u>COMPLAINT</u>

Plaintiffs, Religious Rights Foundation of PA, a Pennsylvania non-profit corporation; C.Y. and L.Y., individually and as parents and natural guardians of F.Y., a minor; A.C., individually and as parent and natural guardian of M.W., a minor, and J.K., individually and as parent and natural guardian of O.K., I.K., L.K., and W.K., minors, file the within Complaint averring in support thereof as follows:

## PARTIES

1

1.    Plaintiff, Religious Rights Foundation of PA, is a Pennsylvania non-profit corporation, organized and existing in accordance with the laws of the Commonwealth of Pennsylvania, with a mailing address of 3091 Enterprise Drive, Suite 200, State College, Centre County, Commonwealth of Pennsylvania (hereinafter referred to as "Religious Rights Foundation").

2.    The mission of the Religious Rights Foundation and its members is to protect, defend, and promote the religious rights, beliefs, opportunities, and tenants of faith of its members, their families, and the greater faith community within the Commonwealth of Pennsylvania.

3.    The Religious Rights Foundation is acting to protect, defend and promote the religious rights of the students who are eligible to attend public school districts within the Commonwealth of Pennsylvania and to participate in the extracurricular and co-curricular activities of the public-school districts, include athletic activities governed by the Pennsylvania Interscholastic Athletic Association, but are denied this generally available benefit due to their enrollment in parochial schools or other religious based educational institution.

4.    Plaintiffs, C.Y. and L.Y., individually and as parents and natural guardians of F.Y., a minor, are individuals residing in Centre County,

Commonwealth of Pennsylvania (hereinafter referred to respectively as "Parent C.Y. Plaintiffs" and "Student F.Y. Plaintiff").

5.  Parent C.Y. Plaintiffs and Student F.Y. Plaintiff reside within the State College Area School District (hereinafter referred to as "SCASD"). Parent C.Y. Plaintiffs are taxpayers in the SCASD and Commonwealth of Pennsylvania.

6.  Parent C.Y. Plaintiffs and Student F.Y. Plaintiff are members of the Religious Rights Foundation.

7.  The SCASD is one of many member school districts within the Pennsylvania Interscholastic Athletic Association (hereinafter referred to as "PIAA member district").

8.  As PIAA member district, the students enrolled within the SCASD are eligible to participate in a variety of interscholastic athletic activities governed by Defendant PIAA's Constitution and Bylaws (hereinafter referred to as "PIAA governed interscholastic athletic activities").

9.  Student F.Y. Plaintiff is eligible in all material respects to attend the SCASD and to participate in the extracurricular and co-curricular activities of the public school district, including PIAA governed interscholastic athletic activities.

10. Student F.Y. Plaintiff attends a parochial school located within the SCASD.

11. Parent C.Y. Plaintiffs made the decision to have Student F.Y. Plaintiff attend a parochial school in the furtherance of their religious beliefs. Student F.Y. Plaintiff also made the decision to attend a parochial school in the furtherance of Student F.Y. Plaintiff's religious beliefs.

12. Plaintiff, A.C., individually and as parent and natural guardian of M.W., a minor, are individuals residing in Huntingdon County, Pennsylvania (hereinafter referred to respectively as "Parent A.C. Plaintiff" and "Student M.W. Plaintiff").

13. Parent A.C. Plaintiff and Student M.W. Plaintiff reside within the Huntingdon Area School District (hereinafter referred to as "HASD"). Parent A.C. Plaintiff is taxpayer in the HASD and Commonwealth of Pennsylvania.

14. Parent A.C. Plaintiff and Student M.W. Plaintiff are members of the Religious Rights Foundation.

15. The HASD is a member school district in the PIAA (hereinafter referred to as "PIAA member district").

16. As PIAA member district, the students who are enrolled within the HASD are eligible to participate in a variety of PIAA governed interscholastic athletic activities.

17. Student M.W. Plaintiff is eligible in all material respects to attend the HASD and to participate in the extracurricular and co-curricular activities of the school district, including PIAA governed interscholastic athletic activities.

18. Student M.W. Plaintiff attends a parochial school located within the HASD.

19. Parent A.C. Plaintiff made the decision to have Student M.W. Plaintiff attend a parochial school in the furtherance of their religious beliefs. Student M.W. Plaintiff also made the decision to attend a parochial school in the furtherance of Student M.W. Plaintiff's religious beliefs.

20. Plaintiff, J.K., individually and as parent and natural guardian of O.K., I.K., L.K., and W.K., minors, are individuals residing in Butler County, Commonwealth of Pennsylvania (hereinafter referred to respectively as "Parent J.K. Plaintiff" and "Students K. Plaintiffs").

21. Parent J.K. Plaintiff and Student K. Plaintiffs reside within the Mars Area School District (hereinafter referred to as MASD"). Parent J.K. Plaintiff is a taxpayer in the MASD and Commonwealth of Pennsylvania.

22. Parent J.K. Plaintiff and Student K. Plaintiffs are members of the Religious Rights Foundation.

23. The MASD is a member school district in the PIAA. (hereinafter referred to as "PIAA member district").

24. As a PIAA member district, the students enrolled within the MASD are eligible to participate in a variety of PIAA governed interscholastic athletic activities.

25. Student K. Plaintiffs are eligible in all material respects to attend the MASD and to participate in the extracurricular and co-curricular activities of the public school district, including PIAA governed interscholastic athletic activities.

26. Student K. Plaintiffs attend parochial schools located within the Commonwealth of Pennsylvania.

27. Parent J.K. Plaintiff made the decision to have Student K. Plaintiffs attend parochial school in the furtherance of their religious beliefs. Student K. Plaintiffs also made the decision to attend parochial school in the furtherance of Student K. Plaintiffs' religious beliefs.

28. The above referenced parents are hereinafter collectively referred to as "Parent Plaintiffs" and the above referenced students are collectively referred to as "Student Plaintiffs."

29. As members of the Religious Rights Foundation, Parent Plaintiffs represent the interests of their minor children, along with the interests of other

parents and minor children who are members of the Religious Rights Foundation and who are eligible in all material respects to attend their respective public-school districts and to participate in the PIAA governed interscholastic athletic activities offered by their respective public school districts.

30. In accordance with its mission, the Religious Right Foundation is acting to protect and defend its members' Free Exercise rights as guaranteed by the First Amendment to the Constitution of the United States of America.

31. Defendant, Pennsylvania Interscholastic Athletic Association, Inc. (hereinafter referred to as the "PIAA" or "Defendant PIAA"), is a domestic non-profit corporation organized and existing in accordance with the laws of the Commonwealth of Pennsylvania with its corporate offices located at 550 Gettysburg Road, Mechanicsburg, Cumberland County, Commonwealth of Pennsylvania.

32. Defendant is a "state actor" within the Commonwealth of Pennsylvania. See, *Campbell v. Pa. Interscholastic Ath. Ass'n (Office of Open Records),* 268 A.3d 502, (2021 Pa. Cmmw.), citing, *School Dist. v. Pennsylvania Interscholastic Athletic Association,* 453 Pa. 495, 309 A 2d. 353 (Pa. 1973); also see, *Commonwealth by Packel v. Pennsylvania Interscholastic Athletic Association*, 334 A.2d 839 (Pa. Cmmw. 1975).

33. Defendant PIAA is governed by and operates in accordance with the provisions of its Constitution and Bylaws. A true and correct copy of Defendant PIAA's 2024-2025 Constitution and Bylaws is attached hereto as Exhibit A and incorporated by reference and made a part hereof as if fully set forth herein.

34. Defendant PIAA's Constitution and Bylaws are applicable to its member schools which are required to comply with the same.

35. Defendant PIAA is governed by its Board of Directors (hereinafter referred to as "PIAA Board").

36. As the governing body, the PIAA Board has various powers and authority, including, but not limited to, the power and authority to have general control over all interscholastic athletic relations and contests in which PIAA member schools participate; to elect its own officers who shall be the officers of PIAA; to establish its own rules, policies, and procedures; to interpret the provisions of its Constitution, By-laws, policies, procedures, rules and regulations; to adopt and revise its By-laws, policies, procedures, rules and regulation; and to exercise such other powers as are in keeping with the growth and needs of PIAA consistent with the provisions of the Constitution, By-laws, policies, procedures, rules and regulations of PIAA. *PIAA. Constitution at 4.*

## JURISDICTION AND VENUE

37. This Court has original jurisdiction pursuant to 28 U.S.C.A. §1331 and 28 U.S.C.A. §1343.

38. Defendant's corporate offices are located within the jurisdiction of the United States District Court for the Middle District of Pennsylvania.

39. This Court has subject matter jurisdiction pursuant to 28 U.S.C.A. §1343(a)(3)(4).

40. Venue is proper in the Middle District pursuant to 28 U.S.C.A. §§1390(a), 1391(b)(2), as Defendant's conduct as set forth herein occurred within the Middle District of Pennsylvania.

## MATERIAL FACTS

41. The preceding paragraphs are incorporated herein by reference and made a part hereof as if fully set forth herein.

42. As a "state actor" in the Commonwealth of Pennsylvania, Defendant PIAA are prohibited from discriminating against Plaintiffs in violation of their rights under the Free Exercise Clause of the First Amendment of the United States Constitution. See, *Campbell v. Pa. Interscholastic Ath. Ass'n (Office of Open Records),* 268 A.3d 502, (2021 Pa. Cmmw.), citing, *School Dist. v. Pennsylvania Interscholastic Athletic Association,* 453 Pa. 495, 309 A 2d. 353 (Pa. 1973); also see,

*Commonwealth by Packel v. Pennsylvania Interscholastic Athletic Association*, 334 A.2d 839 (Pa. Cmmw. 1975).

43. The Free Exercise Clause of the First Amendment states in relevant part as follows:

> Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; . . .

*Amend. 1, U.S. Constitution.*

44. As a state actor, Defendant PIAA cannot enact, adopt, or implement provisions within its Constitution or By-laws that violate Plaintiffs' First Amendment rights just as Pennsylvania's General Assembly and United States Congress cannot enact statutes that violate Plaintiffs' First Amendment rights. *Cantwell v. Conn., 310 U.S. 296, 60 S. Ct. 900, 84 L.Ed. 1213 (1940).*

45. Defendant PIAA has an Equal Opportunity Statement within its Constitution stating that it "believes that all boys and girls should have equal opportunity to participate in all levels of interscholastic athletics regardless of race, color, sex, creed, religion or ethnic background." *PIAA Const., Exhibit A, p. 1.*

46. Defendant PIAA's Constitution further states that its charitable purpose is to promote and support the educational values of interscholastic athletics and the high ideals of good sportsmanship, establish and enforce uniform standards in

interscholastic athletic competition among member schools and support safe and healthy interscholastic athletic competition. *PIAA Const., Exhibit A, p. 1.*

47. Under its Constitution and Bylaws, Defendant PIAA provides students who are enrolled in Defendant PIAA member schools with generally available benefit of participation in PIAA governed interscholastic athletic activities.

48. If the students are enrolled in Defendant PIAA member schools, and meet the eligibility criteria established by Defendant PIAA, Defendant PIAA deems them to be eligible to participate in PIAA governed interscholastic athletic activities.

49. Section 1 – Where Enrolled for Attendance of Article III - Attendance of Defendant PIAA's Bylaws states as follows:

> "To be eligible to participate in an Inter-School Practice, Scrimmage, or Contest, a student must be regularly enrolled in a secondary school and in full-time attendance or be home-schooled.

> Except as otherwise provided in this ARTICLE, a student is eligible only at the school at which the student is enrolled."

*PIAA Bylaws, Exhibit A, p. 13.*

50. Section 2 – Number of Days of Enrollment Necessary to Count as a Semester of Article III of Defendant PIAA's Bylaws states as follows:

> "Fifteen days or more of enrollment in a semester in any secondary school counts as one semester of attendance. . . ."[1]

---

[1] Interpretation Section 2. October 25, 1952, as amended May 25, 2000. Enrollment at any school, accredited or not, counts as enrollment.

*PIAA Bylaws, Exhibit A, p. 13.*

51. Defendant PIAA's Bylaws contains many exceptions to Defendant PIAA's general rule that students are "eligible only at the school at which the student is enrolled" as set forth in Section 1 of Article III of Defendant PIAA's Bylaws. *PIAA Bylaws, Exhibit A, p. 13.*

52. Section 5 – <u>Alternative School Students, Magnet School Students, and Technology School Students</u>, of Article III of Defendant PIAA's Bylaws states in relevant part as follows:

> "Alternative School students, Magnet School students, and Technology School students are eligible at only one school for all interscholastic athletics. A student attending an Alternative School, a Magnet School, or a Technology School on a full-time basis is eligible only at said school if said school offers one or more interscholastic athletic programs. A part-time Alternative School student attending a full-time Alternative School, a part-time Magnet School student attending a full-time Magnet School, and a part-time Technology School student attending a full-time Technology School is eligible only at the school which the student would otherwise attend by virtue of the student's residence. All students attending Alternative Schools, Magnet Schools, or Technology Schools, which do not offer any interscholastic athletic programs, are eligible to participate in interscholastic athletics at the schools that the student would otherwise attend by virtue of their residence.

*PIAA Bylaws, Exhibit A, p. 14.*

53. Section 5 of Article III of Defendant PIAA's Bylaws establish an exception to Defendant PIAA's general rule that students are "eligible only at the school at which the student is enrolled" as set forth in Section 1 of Article III of Defendant PIAA's By-laws.

54. The Section 5 exception is available to students enrolled in Alternative Schools, Magnet Schools, and Technology Schools.

55. Defendant PIAA deems part-time Alternative School students who attend full-time Alternative Schools to be eligible at the schools which the students would have otherwise been enrolled in based on the student's residence.

56. Defendant PIAA deems part-time Magnet School students who attend full-time Magnet Schools to be eligible at the schools which the students would have otherwise been enrolled in based on the student's residence.

57. Defendant PIAA deems part-time Technology School students who attend full-time Technology Schools to be eligible at the schools which the students would have otherwise been enrolled in based on the student's residence.

58. These students are eligible to participate in Defendant PIAA governed athletic activities at schools in which the students are not enrolled based upon the students' residency within those schools.

59. Section 6 <u>Charter School and Cyber Charter School Students</u> of Article III of Defendant PIAA's Bylaws states in relevant part as follows:

"Students enrolled in a Charter School or Cyber Charter School are eligible only at said school in those interscholastic sports sponsored by that school. Students enrolled in a Charter School or Cyber Charter School that does not offer a particular interscholastic sport are eligible to participate in that sport at the school which they would otherwise attend, in the public school district of their residences, provided that the students meet all other eligibility requirements, including, but not limited to, school verified evidence of full-time attendance."[2] [3]

*PIAA Bylaws, Exhibit A, p. 14.*

60. Section 6 of Article III of Defendant PIAA's Bylaws establishes an exception to Defendant PIAA's general rule that students are "eligible only at the school at which the student is enrolled" as set forth in Section 1 of Article III of Defendant PIAA's Bylaws.

---

[2] Interpretation Section 6. March 23, 2007. Where a student is enrolled at a Charter School, and where the public school district in which the student resides has no senior high school, the school at which the student is in full time attendance shall be considered the public school district of residence of the student.

[3] Interpretation Section 6 & 7. October 28, 2020. Where a student enrolls in a private cyber school, it is viewed as being done under a home school education program since private cyber schools are not registered or recognized by the Pennsylvania Department of Education, and the student's eligibility must be determined under Section 7.

61. The Section 6 exception is available to students enrolled in Charter Schools, Cyber Charter Schools, and Private Cyber Schools.

62. Defendant PIAA deems Charter School students to be eligible at the schools which the students would have otherwise been enrolled based on the students' school districts of residency ("home school districts").

63. These Charter School students are eligible to participate in PIAA governed interscholastic athletic activities at the students' home school districts without being enrolled in the home school districts.

64. Like Charter School students, Defendant PIAA deems Cyber Charter School students to be eligible at the schools which the students would have otherwise been enrolled based on the students' school districts of residency ("home school districts").

65. These Cyber Charter School students are eligible to participate in PIAA governed interscholastic athletic activities at the students' home school districts without being enrolled in the home school districts.

66. Defendant PIAA deems Private Cyber School students to be eligible at the schools which the students would have otherwise been enrolled based on the students' school districts of residency ("home school districts").

67. These Private Cyber School students are eligible to participate in PIAA governed interscholastic athletic activities at the students' home school districts without being enrolled in the home school districts.

68. Several of Plaintiffs in this case previously filed a similar complaint against the State College Area School District ("SCASD") alleging that the SCASD was violating Plaintiffs' rights under the Free Exercise clause of the First Amendment and the Equal Protection clause of the Fourteenth Amendment to the United States Constitution by permitting charter school students the right to participate in extracurricular and cocurricular activities, including PIAA governed interscholastic athletic activities without being enrolled in the SCASD. *Religious Rights Foundation, et al. v State College Area School District, et al., Middle District of PA, 4:23-cv-01144-MWB.*

69. The above-referenced litigation was settled via a Consent Order. A true and correct copy of the Consent Order is incorporated by reference as Exhibit B as if fully set forth herein.

70. Section 7 – Privately-Tutored and/or Home-Schooled Students of Article III of Defendant PIAA's Bylaws states in relevant part as follows:

"Students instructed by a properly qualified private tutor under Section 1327 of the Public School Code of 1949 and/or students participating in a home education program under Section 1327.1 of the Public School Code of 1949

16

are eligible **only** at the public schools that the students would otherwise attend by virtue of their residences and, for purposes of Cooperative Sponsorship of a Sport agreements, are deemed to be enrolled at the public schools that the students would have otherwise attend by virtue of their residences."

*PIAA Bylaws, Exhibit A, p. 14.*

71. Section 7 of Article III of Defendant PIAA's Bylaws establishes an exception to Defendant PIAA's general rule that students are "eligible only at the school at which the student is enrolled" as set forth in Section 1 of Article III of Defendant PIAA's Bylaws.

72. The Section 7 exception is available to students instructed by a properly qualified private tutor under Section 13-1327 of the Pennsylvania Public School Code of 1949 (hereinafter referred to as "School Code"), *24 P.S. § 13-1327*, or students participating in a home education program under Section 13-1327.1 of the School Code, *24 P.S. § 13-1327.1*.

73. Defendant PIAA deems privately tutored students, under Section 13-1327 of the School Code, to be eligible at the schools which the students would have otherwise been enrolled based on the students' school districts of residency ("home school districts").

74. These privately tutored students are eligible to participate in PIAA governed interscholastic athletic activities at the students' home school district without being enrolled within the home school districts.

75. Defendant PIAA deems students who receive home education programs (hereinafter referred to as "homeschooled students") under Section 13-1327 of the School Code to be eligible at the schools which the students would have otherwise been enrolled based on the students' school districts of residency ("home school districts").

76. These homeschooled students are eligible to participate in PIAA governed interscholastic athletic activities at the students' home school district without being enrolled within the home school districts.

77. Several of Plaintiffs in this case previously filed a similar complaint against the State College Area School District ("SCASD") alleging that the SCASD was violating Plaintiffs' rights under the Free Exercise clause of the First Amendment and the Equal Protection clause of the Fourteenth Amendment to the United States Constitution by permitting homeschooled students the right to participate in extracurricular and cocurricular activities, including PIAA governed interscholastic athletic activities without being enrolled in the SCASD. *Religious*

*Rights Foundation, et al. v State College Area School District, et al., Middle District*

*of PA, 4:23-cv-01144-MWB; also, see Exhibit B.*

78. Paragraph A of Section 8 Multi-Public School District Academic Arrangements of Article III of Defendant PIAA's Bylaws states in relevant part as follows:

> Where students are enrolled in a public school in the public school district of their residence but, pursuant to an agreement between public school districts, attend all of their classes on a full-time basis at a public school in another public school district, the student may be declare eligible for such sport(s) at either (1) a school in the public school district in which the school the student attends is geographically located or (2) at a school in the student's home public school district. …

*PIAA Bylaws, Exhibit A, p. 14.*

79. Paragraph A of Section 8 of Article III of Defendant PIAA's Bylaws establishes an exception to Defendant PIAA's general rule that students are "eligible only at the school at which the student is enrolled" as set forth in Section 1 of Article III of Defendant PIAA's Bylaws.

80. This exception is available to students who are enrolled in a public school district but attend a different public school district based upon an agreement between the two public school districts.

81. Pursuant to Defendant PIAA's Bylaws, Defendant PIAA provides these students with the option to "be declare eligible by the District Committee for such

sport(s) at either (1) a school in the public school district in which the school the student attends is geographically located or (2) at a school in the student's home public school district." *PIAA Bylaws, Exhibit A, p. 14.*

82. Under this exception, Defendant PIAA has granted itself the authority to declare students' eligible to participate in PIAA governed interscholastic athletic activities at public school districts in which the students are not enrolled.

83. Under this exception, Defendant PIAA could permit students to participate in PIAA governed interscholastic athletic activities against public school districts in which the students are enrolled.

84. Paragraph B of Section 8 – Students Placed by Court Order or as a Result of Disability of Article III of Defendant PIAA's Bylaws states in relevant part as follows:

> "A student who has been placed in a school either by court order or because the student is a Student With A Disability whose Individual Education Plan has concluded that the student's educational needs could not be accommodated in the public declared eligible by the District Committee for such sport(s) at (1) the school the student is attending; (2) a public school in the public school district in which the school the student attends is geographically located; or (3) at the public school the student would otherwise have attended in the student's home public school district. . . ."

*PIAA Bylaws, Exhibit A, p. 14.*

85. Paragraph B of Section 8 of Article III of Defendant PIAA's Bylaws establishes an exception to Defendant PIAA's general rule that students are "eligible only at the school at which the student is enrolled" as set forth in Section 1 of Article III of Defendant PIAA's Bylaws.

86. This exception is available to students who are placed in schools pursuant to orders of court and disabled students who are placed in schools pursuant to individual educational plans ("IEP") because of educational needs.

87. Pursuant to Defendant PIAA's Bylaws, Defendant PIAA provides these students with the option to "be declare eligible by the District Committee for such sport(s) at (1) the school the student is attending; (2) a public school in the public school district in which the school the student attends is geographically located; or (3) at the public school the student would otherwise have attended in the student's home public school district.

88. Under this exception, Defendant PIAA has granted itself the authority to declare students' eligible to participate in PIAA governed interscholastic athletic activities at the school the students are attending; or at a different school within the geographic boundaries of the public school district in which the school is located; or at the students' home school districts.

89. Under this exception, Defendant PIAA permits students to participate in PIAA governed interscholastic athletic activities at two different schools other than the school district in which these students are enrolled. *PIAA Bylaws, Exhibit A, p. 14.*

90. Defendant PIAA's member school districts are located throughout the Commonwealth of Pennsylvania, including, member school districts located within the United States District Court for the Middle District of Pennsylvania.

91. The exceptions to Defendant PIAA's general rule that students are "eligible only at the school at which the student is enrolled" as set forth in Section 1 of Article III of Defendant PIAA's Bylaws are applicable to students residing throughout the Commonwealth of Pennsylvania.

92. Despite numerous exceptions for other students, Defendant PIAA has failed and refused to provide students who attend parochial schools with similar exceptions.

93. The SCASD has agreed that parochial school students who reside within the SCASD have the right to participate in extracurricular and cocurricular activities at the SCASD in the same manner as homeschooled students and charter school students.

94. The HASD has agreed that parochial school students who reside within the HASD have the right to participate in extracurricular and cocurricular activities at the HASD in the same manner as homeschooled students and charter school students.

95. Under Defendant PIAA's Constitution and Bylaws, if students enrolled in parochial schools participate in their home school districts' interscholastic athletic activities governed by Defendant PIAA, Defendant PIAA will declare the parochial school student ineligible to participate.

96. Plaintiffs have made a good faith effort to resolve this issue with Defendant PIAA.

97. Despite several communications with Defendant PIAA, including providing Defendant PIAA's Board with the opportunity to meet and discuss Plaintiffs' request, Defendant PIAA has failed and refused to provide Student Plaintiffs and other parochial school students throughout the Commonwealth the ability to participate in PIAA governed interscholastic athletic activities in their home school districts.

98. Plaintiff Religious Rights Foundation joins this Complaint to protect, defend, and promote the religious rights, beliefs, and opportunities of not only the

Parent Plaintiffs and Student Plaintiffs, but also, the religious rights, beliefs, and opportunities of similarly situated members of the Religious Rights Foundation.

99. Parent Plaintiffs and Student Plaintiffs are members of the Religious Rights Foundation, and they are representative of the other members of the Religious Rights Foundation who are similarly situated and/or who support the Foundation's efforts to protect the religious rights of its members.

100. Parent Plaintiffs and Student Plaintiffs have suffered, and continue to suffer, an injury in fact, as a direct result of Defendant PIAA's discriminatory conduct as set forth herein.

101. Plaintiffs request relief that, will enjoin, and prohibit Defendant PIAA from continuing to act in a discriminatory manner toward Plaintiffs and other similarly situated individuals.

## COUNT I
## PLAINTIFFS v. DEFENDANT
## VIOLATION OF THE FIRST AMENDMENT
## FREE EXERCISE CLAUSE - 42 U.S.C. §1983

102. The preceding paragraphs are incorporated herein by reference and made a part hereof as if fully set forth herein.

103. Parent Plaintiffs and Student Plaintiffs are residents of their respective home school districts which are Defendant PIAA member school districts.

104.   Student Plaintiffs are eligible in all material respects to attend their respective home school districts and to participate in PIAA governed interscholastic athletic activities offered at their respective home school districts.

105.   If Student Plaintiffs enrolled in their respective home school districts, Student Plaintiffs would be eligible to participate in PIAA governed interscholastic athletic activities without being declared ineligible by Defendant PIAA.

106.   Parent Plaintiffs have enrolled their children (Student Plaintiffs) in parochial schools to further both Parent Plaintiffs' and Student Plaintiffs' religious beliefs.

107.   Student Plaintiffs regularly participate in religious instruction and activities at their respective parochial schools.

108.   Parent Plaintiffs participate in religious activities, along with their children (Student Plaintiffs), at the parochial schools.

109.   The religious instruction and activities are an integral part of the educational programs provided to the Student Plaintiffs at their parochial schools.

110.   By attending parochial schools, Student Plaintiffs do not have the opportunity to participate in the various PIAA governed interscholastic athletic activities generally available to the students enrolled in their respective home school districts.

111.   Defendant is a "state actor" within the Commonwealth of Pennsylvania. See, *Campbell v. Pa. Interscholastic Ath. Ass'n (Office of Open Records),* 268 A.3d 502, (2021 Pa. Cmmw.), citing, *School Dist. v. Pennsylvania Interscholastic Athletic Association,* 453 Pa. 495, 309 A 2d. 353 (Pa. 1973); also see, *Commonwealth by Packel v. Pennsylvania Interscholastic Athletic Association*, 334 A.2d 839 (Pa. Cmmw. 1975).

112.   As a "state actor" in the Commonwealth of Pennsylvania, Defendant PIAA are prohibited from discriminating against Plaintiffs in violation of their rights under the Free Exercise Clause of the First Amendment of the United States Constitution. See, *Campbell v. Pa. Interscholastic Ath. Ass'n (Office of Open Records),* 268 A.3d 502, (2021 Pa. Cmmw.), citing, *School Dist. v. Pennsylvania Interscholastic Athletic Association,* 453 Pa. 495, 309 A 2d. 353 (Pa. 1973); also see, *Commonwealth by Packel v. Pennsylvania Interscholastic Athletic Association*, 334 A.2d 839 (Pa. Cmmw. 1975).

113.   Defendant PIAA permits a variety of students the right to participate in their respective home school districts without attending or enrolling in said home school districts as set forth above.

114.   As one example, Defendant PIAA permits Charter School students the right to participate in their respective home school districts' PIAA governed

interscholastic athletic activities if the students' charter schools do not offer the PIAA governed interscholastic athletic activities.

115.   Parent Plaintiffs have requested that Defendant PIAA permit Student Plaintiffs to participate in PIAA governed interscholastic athletic activities in the same manner as charter school students.

116.   Defendant PIAA has failed and refused to grant Parent Plaintiffs' requests to permit Student Plaintiffs the right to participate in PIAA governed interscholastic athletic activities in the same manner as charter school students and other students.

117.   Defendant PIAA has not provided Parent Plaintiffs with an explanation why it is discriminating against parochial school students while providing numerous exceptions for other students.

118.   Defendant PIAA has historically refused to grant Student Plaintiffs and other similarly situated parochial school students the ability to participate in PIAA governed interscholastic athletic activities at their respective home school districts if their parochial schools did not offer the same interscholastic athletic activity.

119.   Plaintiff Religious Rights Foundation exists to help protect, defend, and promote the religious rights, beliefs, opportunities, and tenants of faith of its

members, their families, and the greater faith community within the Commonwealth of Pennsylvania.

120.    Defendant PIAA's discriminatory conduct towards Plaintiffs is exactly the type of discriminatory conduct that the Religious Right Foundation was formed to fight against.

121.    Chief Justice Roberts of the Supreme Court of the United States recently opined, "This Court has repeatedly confirmed that denying a generally available benefit solely on account of religious identify imposed a penalty on the free exercise of religious." *See Trinity Lutheran Church of Columbia, Inc. v. Comer, 582 U.S. 449, 451, 137 S.Ct. 2012, 2016, 198 L.Ed.2d 551, 553 (2017).*

122.    The basis for Defendant PIAA's refusal to grant Student Plaintiffs and other similarly situated parochial school students the ability to participate PIAA governed interscholastic athletic activities is Student Plaintiffs' enrollment in a parochial school.

123.    Student Plaintiffs are enrolled in parochial schools on account of and to further their religious beliefs and faith.

124.    Defendant PIAA is forcing Plaintiffs to choose between their religious beliefs and the generally available benefit of participation in PIAA governed

interscholastic athletic activities that are not offered at their respective parochial schools.

125. Under Defendant PIAA's Bylaws, Student Plaintiffs' status as parochial school students disqualifies them from participation in PIAA governed interscholastic athletic activities at their home school districts even if those same interscholastic athletic activities are not available at their parochial schools.

126. Chief Justice Roberts further opined, "It has remained a fundamental principal of this Court's free exercise jurisprudence that laws imposing 'special disabilities on the basis of … religious status' triggers the strictest scrutiny." *Id.* at *552-452, citing*, *Church of Lukumi Babalu Aye, Inc. v. Hialeah, 508 U.S. 520, 533, 113 S.Ct. 2217, 2019-2021, 124 L.Ed.2d 472 (1993).*

127. The provisions of Defendant PIAA's Constitution and Bylaws are not neutral or are not generally applicable and as such, Defendant PIAA's Constitution and Bylaws are subject to strict scrutiny.

128. Defendant PIAA's Bylaws provides numerous mechanisms for individualized exemption or exceptions as set forth above.

129. Defendant PIAA's Bylaws provides numerous mechanisms for secular conduct while prohibiting any exception for religious conduct such as enrollment within a parochial school.

130.    Defendant PIAA has failed and refused to assert a legitimate interest to justify its disparate treatment of parochial school students.

131.    Defendant PIAA does not have a legitimate basis to justify its disparate treatment of parochial school students.

132.    Defendant PIAA's custom, practice, and policy of excluding parochial school students from participation in PIAA governed interscholastic athletic activities at the students' home school districts if said activities are not offered at their respective parochial schools is subject to the highest standard of review and cannot not survive strict scrutiny by this Honorable Court.

133.    As Chief Justice Roberts has opined, "The Free Exercise Clause 'protect[s] religious observers against unequal treatment' and subjects to the strictest scrutiny laws that target the religious for 'special disabilities' based on their 'religious status." *Id. at 458-459, citing, Church of Lukumi Barbalu Aye, supra.*

134.    The Unites States Supreme Court has made it clear that "… denying a generally available benefit solely on account of religious identity imposes a penalty on the free exercise of religion that can be justified only by a state interest 'of the highest order." *Id., citing, McDaniel v. Paty*, 435 U.S. 618, 628, 98 S.Ct. 1322, 55 L.Ed.2d 593 (1978) (plurality opinion) (quoting Wisconsin v. Yoder; 406 U.S. 205, 215, 92 S.Ct. 1526, 32 L.Ed.2d. 15 (1972)).

135.   Defendant PIAA has a custom, practice, and policy of denying a generally available benefit to Plaintiffs solely on account of Plaintiffs' religious identity.

136.   Plaintiffs have suffered harm as a direct result of Defendant's discriminatory conduct towards them and similarly situated members of the Religious Rights Foundation.

**COUNT II**
**PLAINTIFFS v. DEFENDANT**
**VIOLATION OF THE FOURTEENTH AMENDMENT**
**EQUAL PROTECTION CLAUSE - 42 U.S.C. §1983**

137.   The preceding paragraphs are incorporated herein by reference and made a part hereof as if fully set forth herein.

138.   Defendant is a "state actor" within the Commonwealth of Pennsylvania. See, *Campbell v. Pa. Interscholastic Ath. Ass'n (Office of Open Records),* 268 A.3d 502, (2021 Pa. Cmmw.), citing, *School Dist. v. Pennsylvania Interscholastic Athletic Association,* 453 Pa. 495, 309 A 2d. 353 (Pa. 1973); also see, *Commonwealth by Packel v. Pennsylvania Interscholastic Athletic Association*, 334 A.2d 839 (Pa. Cmmw. 1975).

139.   As a "state actor" in the Commonwealth of Pennsylvania, Defendant PIAA are prohibited from discriminating against Plaintiffs in violation of their rights

under the Equal Protection clause of the Fourteeth Amendment of the United States Constitution.

140.   Under the Equal Protection clause, Section I of the Fourteenth Amendment, "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S.C.A. Const. Amend. XIV, § I; *City of Cleburne v. Cleburne Living Center,* 473 U.S. 432 (1985).

141.   The purpose of the Equal Protection Clause of the Fourteenth Amendment is to secure every person within a state's jurisdiction is protected against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents. *See Village of Willowbrook v. Olech,* 528 U.S. 562, 564, 120 S. Ct. 1073 (2000).

142.   "The Equal Protection Clause 'announces a fundamental principle: the State must govern impartially,' and 'directs that all persons similarly circumstanced shall be treated alike.' Therefore, '[g]eneral rules that apply evenhandedly to all persons within the jurisdiction unquestionably comply' with the Equal Protection Clause. Only when a state 'adopts a rule that has a special impact on less than all persons subject to its jurisdiction' does a question arise as to whether the equal protection clause is violated." *See Alexander v. Whitman,* 114 F.3d 1392, 1403, (3d Cir.1997), quoting, *New York City Transit Authority v. Beazer,* 440 U.S. 568, 587,

99 S.Ct. 1355, 1367, 59 L.Ed.2d 587 (1979); quoting, *Plyler v. Doe,* 457 U.S. 202, 216, 102 S.Ct. 2382, 2394, 72 L.Ed.2d 786 (1982), quoting, *F.S. Royster Guano Co. v. Virginia,* 253 U.S. 412, 415, 40 S.Ct. 560, 561-62, 64 L.Ed. 989 (1920).

143.   The Free Exercise Clause of the First Amendment, which has been applied to the States through the Fourteenth Amendment provides that "Congress shall make no law respecting an establishment of religion or *prohibiting the free exercise thereof..." See Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah,* 508 U.S. 520, 531, 113 S.Ct. 2217, 124 L.Ed.2d 472 (1993), *citing*, *Cantwell v. Connecticut,* 310 U.S. 296, 303, 60 S.Ct. 900, 903, 84 L.Ed. 1213 (1940).

144.   "At a minimum, the protections of the Free Exercise Clause pertain if the law at issue discriminates against some or all religious beliefs or regulates or prohibits conduct because it is undertaken for religious reasons." *See Lukumi, supra* at 532, citing, *Braunfeld v. Brown,* 366 U.S. 599, 607, 81 S.Ct. 1144, 1148, 6 L.Ed.2d 563 (1961); and *Fowler v. Rhode Island,* 345 U.S. 67, 69-70, 73 S.Ct. 526, 527, 97 L.Ed. 828 (1953).

145.   "Official action that targets religious conduct for distinctive treatment cannot be shielded by mere compliance with the requirement of facial neutrality. The Free Exercise Clause protects against governmental hostility, which is masked, as well as overt. 'The Court must survey meticulously the

circumstances of governmental categories to eliminate, as it were, religious gerrymanders.'" *See Lukumi, supra* at 534, *quoting*, *Walz v. Tax Comm'n of New York City,* 397 U.S. 664, 696, 90 S.Ct. 1409, 1425, 25 L.Ed.2d 697 (1970).

146. "Nor does it make a difference that faith-based bigotry did not motivate the orders. The constitutional benchmark is 'government *neutrality,'* not 'governmental avoidance of bigotry.'" *See Roberts v. Neace,* 958 F.3d 409, 415 (2020), citing, *Colo. Christian Univ. v. Weaver,* 534 F.3d 1245, 1260 (10th Cir. 2008).

147. "A law is not neutral and generally applicable unless there is 'neutrality between religion and non-religion.' *Id.*, citing, *Hartmann v. Stone,* 68 F.3d 973, 978 (6th Cir, 1995).

148. "And a law can reveal a lack of neutrality by protecting secular activities more than comparable religious ones." *Id.*, citing, *Hartmann* at 979; *Midrash Sephardi, Inc. v. Town of Surfside,* 366 F.3d 1214, 1233-35, 1234 n.16 (11th Cir. 2004); *see also Shrum v. City of Coweta,* 449 F.3d 1132, 1145 (10th Cir. 2006) ("[T]he Free Exercise Clause is not confined to actions based on animus.").

149. Defendant PIAA provides a variety of students with the benefit of participation in PIAA governed interscholastic athletic events at their respective

home school district or other schools without requiring these students to be enrolled in their home school district or the other schools.

150.  Defendant PIAA has failed and refused to treat parochial school students in the same manner.

151.  Defendant PIAA treats Student Plaintiffs and other parochial school students in a disparate and discriminatory manner which is based solely upon their enrollment in parochial schools.

152.  Defendant PIAA has a custom, practice, and policy of denying a generally available benefit to Plaintiffs solely on account of Plaintiffs' religious identity.

153.  Plaintiffs have suffered harm as a direct result of Defendant's discriminatory conduct towards them and similarly situated members of the Religious Rights Foundation.

154.  Injunctive relief is necessary to prevent continued irreparable harm to Plaintiffs that cannot be adequately compensated by damages.

155.  The violation of a constitutional right is per se irreparable harm. "The loss of First Amendment freedoms, for even minimal periods of time unquestionably constitutes irreparable injury." *See Roman Catholic Diocese of Brooklyn v. Cuomo,*

*__ U.S. __, 141 S.Ct. 63, 67-68, 208 L.Ed.2d 206, (2020), quoting, Elrod v. Burns,*

*427, U.S. 347, 373, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976).*

156.   Defendant PIAA will not be harmed if injunctive relief is granted to Plaintiffs.

157.   Injunctive relief would restore the "status quo" under which Plaintiffs fully enjoyed the Free Exercise Rights protected by the First Amendment.

158.   Injunctive relief would restore the "status quo" under which Plaintiffs fully enjoyed equal protection under the Fourteeth Amendment.

159.   Plaintiffs' prayer for relief is clear and Plaintiffs are likely to prevail on the merits of their claims.

160.   "It has remained a fundamental principal of this Court's free exercise jurisprudence that laws imposing 'special disabilities on the basis of … religious status' triggers the strictest scrutiny." *Id., citing*, *Church of Lukumi Babalu Aye, Inc. v. Hialeah, 508 U.S. 520, 533, 113 S.Ct. 2217, 2019-2021, 124 L.Ed.2d 472 (1993)*.

161.   Plaintiffs' prayer for relief is narrowly tailored to abate the improper conduct of Defendant PIAA and injunctive relief will not adversely impact the public interest.

162.   Plaintiffs have satisfied each of the elements necessary for injunctive relief and injunctive relief is appropriate in this matter to prevent further violations of Plaintiffs' Constitutional rights.

## PRAYER FOR RELIEF

Plaintiffs respectfully request that this Honorable Court grant Plaintiffs relief as follows:

1. An Order finding Defendant PIAA's conduct in violation of Plaintiffs' rights as guaranteed by the Free Exercise Clause of the First Amendment to the United States Constitution.

2. An Order finding Defendant PIAA's conduct in violation of Plaintiffs' rights as guaranteed by the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

3. An Order enjoining Defendant PIAA's discriminatory conduct.

4. An Order requiring Defendant PIAA to grant Student Plaintiffs, and other similarly situated students, the right to participate in PIAA governed interscholastic athletic activities at their respective home school districts if the same PIAA governed interscholastic athletic activities are not available at the students' respective parochial schools.

5. An Order awarding counsel fees and costs to Plaintiffs and requiring Defendant PIAA to reimburse the same.

6. An Order granting any other relief deemed appropriate by the Court.

Respectfully submitted,

**DILLON McCANDLESS KING COULTER & GRAHAM LLP**

By: */s/ Thomas E. Breth*
    Thomas E. Breth, Esquire
    PA I.D. No. 66350
    tbreth@dmkcg.com
    Thomas W. King, III, Esquire
    PA I.D. No. 21580
    tking@dmkcg.com

    *Counsel for Plaintiffs*

    *Special Counsel to the Thomas More Society*